Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

Civil Division

| | | |
|---|---|---|
| Jay Brodsky | ) | Case No. $18 - 13045(KM)$ |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| Hilton Worldwide Holdings Inc; Hyatt Hotels Corp; | ) | |
| Marriott International Inc; Wyndham Worldwide Corp; | ) | |
| InterContinental Hotel Group; John and Jane Doe et al | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

## COMPLAINT FOR A CIVIL CASE

### I.   The Parties to This Complaint

#### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Jay Brodsky |
| Street Address | 240 Est Shore Road, Apt. 444 |
| City and County | Great Neck   Nassau County |
| State and Zip Code | New York   11023 |
| Telephone Number | 973-568-1666 |
| E-mail Address | demcointerexport@yahoo.com |

#### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| Name | Hilton Worldwide Holdings Inc. |
|---|---|
| Job or Title *(if known)* | |
| Street Address | 7930 Jones Branch Drive, Suite 1100 |
| City and County | McClean    Fairfax County |
| State and Zip Code | Virginia    22102 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| Name | Hyatt Hotels Corporation |
|---|---|
| Job or Title *(if known)* | |
| Street Address | 71 Wacker Drive, 12th Floor |
| City and County | Chicago |
| State and Zip Code | Illinois  60606 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| Name | Marriott International Inc. |
|---|---|
| Job or Title *(if known)* | |
| Street Address | 10400 Fernwood Road |
| City and County | Bethesda |
| State and Zip Code | Maryland    20817 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| Name | Wyndham Worldwide Corporation |
|---|---|
| Job or Title *(if known)* | |
| Street Address | 22 Sylvan Way, Parsippany |
| City and County | Parsippany    Morris County |
| State and Zip Code | New Jersey  07054 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question          ☑ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Clayton Act, 15 USC § 15(a) & 26
Sherman Antitrust Act, 15 USC § 1

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* Jay Brodsky _____ , is a citizen of the

State of *(name)* New York _____ .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated

under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of

the State of *(name)* _____ . Or is a citizen of

*(foreign nation)* _____ .

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

        The defendant, *(name)*  Wyndham Worldwide Corporation    , is incorporated under

        the laws of the State of *(name)*    New Jersey    , and has its

        principal place of business in the State of *(name)*    New Jersey    .

        Or is incorporated under the laws of *(foreign nation)*    ,

        and has its principal place of business in *(name)*    .

    *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

    The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

    More than $75,000.00

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See attached amended complaint

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

see attached amended complaint

## V.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.  For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          August 21, 2018

Signature of Plaintiff

Printed Name of Plaintiff          Jay Brodsky

### B.  For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW JERSEY

| | |
|---|---|
| *THE MATTER OF:* | *Issues before the court;* |
| | *amongst others:* |
| JAY BRODSKY | Clayton Act, 15 USC § 15(a) & 26 |
| | Sherman Antitrust Act, 15 USC § 1 |
| *-against-* | |
| HILTON WORLDWIDE HOLDINGS INC. | |
| HYATT HOTELS CORPORATION | |
| MARRIOTT INTERNATIONAL INC. | |
| WYNDHAM WORLDWIDE CORPORATION | |
| INTERCONTINENTAL HOTEL GROUP | |
| JOHN AND JANE DOE *et al* | |

AMENDED FEDERAL COMPLAINT

## AFFIRMATION:

1. On this 15th day of August, 2018, Pursuant to Federal Rules of Civil Procedure

Rule 8, the Petitioner, Jay Brodsky aka known as, Mr. Brodsky, resides at, 240 East

Shore Road, Apartment 444, Great Neck, New York 11023, duly deposes that the

facts as stated herein are true to the best of his knowledge. Petitioner initiates this

adjudication pursuant to Rule (8) of the Federal Rules of Civil Procedure.

## VENUE AND JURISTICTION:

2. Venue is appropriate under 28 U.S.C.A. § 1332 because, among other things: the

plaintiff, Jay Brodsky resides and is a citizen of New York State, County of

Nassau; The respondents conduct business and directs their activities to residents

of New York State, County of Nassau.

3. The United States District Court for the Eastern District of New Jersey has

jurisdiction over the parties because at least one of the Defendants conducts a

major part of their national operations and conduct business activities from their

headquarters in various other states outside the purview of New Jersey, with an

advertising budget not exceeded in other jurisdictions throughout the United States.

4. Because there are issues pursuant to Section [1] of the Sherman Act, 15 USC § 1

and Section[4](a) of the Clayton Act, 15 USC § [15](a) and 28 USC §1331 and

1337 are covered under the jurisdictional purview of a Federal Court they are

actionable under the laws of the United States; for the Plaintiff to pursue damages

to recover equitable relief, costs of suit, treble damages and punitive damages as

the court see's fit.

5. At least one of the Defendants is licensed to do business in the State of New

Jersey as memorialized pursuant to 15 USC § 15 and 22, and 28; USC § 1391(b)

and (c).

## THE PARTIES

Pursuant to Rule 7(a) of the Federal Rules of Civil Procedure the parties are as

Follows:

## THE PLAINTIFF;

6. Jay Brodsky, 240 East Shore Road, Apt. 444, Great Neck, New York 11023.

## THE DEFENDANTS;

7. Hilton Worldwide Holdings Inc., 7930 Jones Branch Drive, Suite 1100, McLean,

Virginia 22102. As a registered State of Delaware Corporation they are one of the

largest hospitality companies in the world.

8. Hyatt Hotels Corporation, 71 Wacker Drive, 12th Floor, Chicago, Illinois 60606.

As a Delaware registered corporation they are one of the largest hospitality

companies in the world.

9. Marriott International Inc., 10400 Fernwood Road, Bethesda Maryland 20817.

As a registered State of Delaware corporation they are one of the largest hospitality

companies in the world.

10. Wyndham Worldwide Corporation, 22 Sylvan Way, Parsippany, New Jersey

07054. As a registered State of Delaware corporation they are one of the largest

hospitality companies in the world.

11. Intercontinental Hotel Group, 3 Ravinia Drive, Suite 100, Atlanta, Georgia

30346. As a foreign registered corporation of the United Kingdom they are one of

the largest hospitality companies in the world.

## DEFENDANTS MARKET IMPACT

12. Hilton Worldwide Holdings Inc., [5,168] Hotels throughout [103] Countries

and Territories Worldwide.

13. Hyatt Hotels Corporation, [739] Properties throughout [37] Countries and

Territories with a controlling interest in [13] hotel brands.

14. Marriott International Inc., [6,000] Hotels throughout [122] Countries and
Territories Worldwide.

15. Wyndham Worldwide Corporation, [8,300] Hotels Worldwide.

16. Intercontinental Hotel Group, [5,273] Hotels throughout [100] Countries and
Territories Worldwide.

17. THE DEFENDANTS, Hilton, Hyatt, Marriott, Choice, Wyndham and
Intercontinental Hotels, control nearly Sixty Percent of all hotel room inventory
throughout the United States.

## JOHN AND JANE DOE *et al*

18. John and Jane Doe *et al*, are yet known to the Plaintiff. As information
becomes available disclosing the nature of their involvement in these offenses, they
will be affirmed as codefendants in their own right.

## AGENTS AND THOSE SIMILARLY SITUATED

19. WHEREFORE, there are others yet named who acted as co-conspirators with
the Defendants who were authorized or ordered by those appointed to transact
business as officers, directors, agents, employee's and representatives and therefore
by the authority vested in them managed, directed, controlled or transacted each
entities business affairs.

20. The yet to be named co-conspirators acted and made statements to further the conspiracy against the Plaintiff. These acts by the Defendants were through their appointed officers, directors, agents, employee's and representatives and therefore by the authority vested in them managed, directed, controlled or transacted each entities business affairs.

## BACKGROUND PURSUANT TO THIS ACTION

21. The Plaintiff was a guest at one of the Defendants properties, Hilton Worldwide Holdings Inc. on two separate occasions. Both were extended stays at two separate Homewood Suites Hotels properties due to circumstances beyond his control. The first extended stay was at a Homewood Suites Hotel property located at 125 Route 17 South, East Rutherford, New Jersey form the 16th day of September, 2014 until approximately the 15th day of February, 2015. The second extended stay was at another Homewood Suites Hotel property located at 1585 Round Swamp Road, Plainview, New York 11803 from 26th day of October, 2015 until approximately the 21st day of January, 2018.

22. The first stay as a guest of the Homewood Suites Hotel, East Rutherford, New Jersey was One Hundred Thirty-Two (132) consecutive days.

23. The second stay as a guest of the Homewood Suites Hotel, Plainview, New

York was Seven Hundred Ninety-Eight (798) consecutive days.

24. Since the conclusion of both aforementioned Hotel stays, the Plaintiff

discovered through research that a conspiracy to suppress or expurgate keyword

search advertising that would potentially impact each Defendant's competitive

pricing formula from appearing to the Plaintiff when on numerous occasions he

searched for better pricing then what he was already paying.

25. The Plaintiff discovered that the Defendant's engaged in anticompetitive

behavior when they mutually agreed to restrain price comparisons during routine

internet searches therefore preventing customers from bidding on prices that would

ordinarily appear when those conspirators post/posted their best extended or short

term stay rates compared to those posted by competitors. For example Homewood

Suites Hotels restrained mentioning the name Residence Inn by Marriott Hotels

during routine searches by customers who hope/hoped to disclose competitive

pricing. The practice of intentionally suppressing such information prevented the

conspirators from constructing a proper response comparing each hotels pricing,

quality or services thereby intentionally stifling the efforts of potential customers

from making educated and informed decisions about where to stay. The agreement

which the Defendants entered into is/was tantamount to the Ford Motorcar

Company marketing their Mustang car model and purposely suppressing all

mention or comparison to Chevrolet's Camaro car model therefore giving both

manufacturers an unfair advantage at the expense of those potential customers who

ordinarily rely on such information to conclude an educated and cost effective

decision using all relevant facts at their disposal.

26. Hotels generally have two principle avenues of marketing room availability.

First is via the internet directly through the Hotels website; second is through a

third party vendor commonly referred to as Online Travel Agencies (OTA's) who

derive income by charging a commission for their services. OTA's, are generally

less preferred by Hotel chains due to the cost incurred by paying commissions for

their services. The OTA's, are less preferred by Hotels because they expose

potential customers to a wider variety of choices therefore creating competition.

27. The basis for adjudicating this case is rooted in the Defendants effectuating a

concerted effort to diminish competition with each other from the purview of

potentially new customers. The Defendants conspired by written agreement to

mutually suppress branded keyword search advertising when potential customers

navigate through search engines such as Yahoo or Google for the best price possible.

28. "Keyword" searches are at the heart of these issues before this court. Generally there is a bidding process that takes place when vendors such as the Defendants make available to a search engine like Google how much they are willing to pay for each "Click" by a consumer searching for their best option. Such clicks are an essential part of search engines overall revenue as they guide potential consumers in the direction of viewing products that are beyond the algorithmic search results already in place. An example of this concept might be when a consumer types in "Soda" as a keyword search on Google. Coca Cola might be the beneficiary when that keyword search automatically leads a consumer to their website.

29. Relevant to this complaint is when a potential consumer types in "Marriott Residence Inn," (as an example) as a keyword search on a major search engine. Because Hilton Hotels tendered a bid to, "Google," each time he/she searches for Residence Inn Hotels as an option for their stay, Hiltons Homewood Suites brand will automatically appear as a viable option for that consumer to consider. On subsequent searches Hilton's Homewood Suites Hotels will appear each time that consumer searches in the future for Residence Inn Hotels along with many other

brands of Hotels who are also vying for additional business. Another reason why

Hilton or Marriott benefit from such keyword searches is saving on commissions

paid to OTA's when consumers choose to book rooms through a Hotels own portal.

Additionally it allows a brand that markets through its own website to incentivize

sales by offering discounts or add ons to consumers who book directly instead of

through third party OTA's.

30. OTA's on the other hand incentivize their services to consumers by offering

consumers exposure to potential cost saving options that are encompassed within

their dominion. The same OTA's benefit monetarily by earning commissions,

advertising revenue exposure and building ongoing relationships with consumers

to inspire additional business well into the future. OTA's bidding for prime

positions on keyword searches are a viable way to facilitate those options to occur.

31. Branded keyword searches meant/mean diminishing returns for Hotel chains

direct marketing prospects prior to 2014. First, it allowed third party OTA's an

opportunity to usurp potential customers into purchasing rooms directly from the

brand named Hotels therefore causing, for example Hilton or Marriott, to be

compelled into paying commissions that ultimately effected/effect their bottom line

profitability. Secondly, to compete for direct sales Hilton, Marriott or other

trademarked brand names were/are subjugated into lowering prices to compete.
The trademarked branded Hotels have long been constricted by OTA's as they
viewed/view their actions as stealing customers from them therefore diminishing
revenues derived from advertising when consumers directly view what they have
to offer.

32. Sometime in 2015 the Defendants conspired by mutual agreement to obstruct
the longtime industry wide practice of creating competition through branded
keyword searches. When the agreement was reached it was unlawfully disjoined
into two parts. First, a mutual agreement to no longer proffer bids related to
branded keyword searches was initiated. Second was imparting contractually
binding clauses within their agreements with OTA's to prohibit them or their
affiliate OTA's from bidding on keyword searches.

33. The conspiring Defendants all but ended OTA's an opportunity to impart
competitive advertising once an agreement between them was initiated and
affirmed. Concluding a covert binding agreement between the Defendants has
caused great harm to the Plaintiff who searched via internet for the lowest prices
available throughout the tristate area (New York, New Jersey and Connecticut) to
facilitate an extended stay rate using keyword search options. The first incident

occurred during September, 2014 through February, 2015 when he stayed at a

subject property located in East Rutherford, New Jersey for 132 days. The second

incident occurred between October, 2015 through January, 2018 when he stayed at

a different subject property located in Plainview, New York for 798 consecutive

days. Both properties were under the guise of Hilton Homewood Suites Hotels. As

both stays were extensive, being offered an opportunity to save even a *de minimus*

amount of money would have provided the Plaintiff with great savings.

34. Allowing the Defendants an opportunity to execute those aforementioned

anticompetitive agreements past, present or future has/will cause the Plaintiff to

pay more for Hotel stays as well as lower transaction fee's to do so. Such actions

by the Defendants are/were illegal pursuant to Sections 4 and 16 of the Clayton

Act, 15 USC § 15(a) and 26, for violations of section 1 of the Sherman Act, 15

USC § 1. In re Publ'n Paper Antitrust Litig., 690 F.3d 51 (2d Cir. 2012) An

agreement between competitors to fix prices, known as a "horizontal price-fixing

agreement," categorically constitutes an unreasonable restraint, and, accordingly, is

unlawful per se under the Sherman Act. Sherman Act, § 1, 15 U.S.C.A. § 1.

## FIRST ALLEGATION OF SUBSTANCE
### *Consumers Ability to Find and Rent Hotel Rooms Online*

35. Potential Hotel guests have the option to pursue short term and long term stays

by employing several methods to search online. Connecting directly to a particular

Hotels website is one method. Another way to discover current lodging options is

by employing the services of a third party Online Travel Agency (OTA) that

enables a consumer to search numerous websites simultaneously for the best price

possible. A few well known examples of OTA's, are hotels.com or priceline.com

which explore all search engines simultaneously at no additional cost to a

consumer.

36. Examples of a consumer searching the internet for Hotel vacancies by

executing a "Keyword," search might be, "Hotels Paris France," or "Hilton New

York City."

37. Once a keyword search is launched there a two types of responses that may

occur? First there are algorithmic results and second are responses that are paid for

by a sponsors proffering bids to various search engines to display advertisements

relating to those keywords when potential consumers make inquiries during the

normal course of customer searches. These displayed advertisements vary in frequency and cost from one search engine to another.

38. Prior to the Defendants entering into these aforementioned illegal agreements there were an abundance of opportunities to market Hotel rooms via the internet equally through both direct marketing and through OTA's. Having a choice was beneficial to consumers who saved money on room rates due to the competitive nature of doing business in a fair marketing environment. Examples of how business was pursued by consumers and vendors alike was/is when a keyword search like "Paris, France Hotel,"is/was initiated or "Marriott Tokyo," as the results automatically appear simultaneously from both OTA websites like Priceline and from direct marketers like Hilton Hotels they afford consumers greater choices therefore promoting overall downward pressure on room rates. Without contrived restrictions being imposed a search such as, "Marriott Tokyo," would result in advertisements from Hilton, Hyatt or Intercontinental to appear and other responses from priceline.com or hotels.com giving consumers an advantage to find better pricing.

39. OTA's have captured a 50% foothold on the online booking sector in which the Defendants market Hotel room availability. For independent boutique Hotels that

percentage is even higher. OTA's do however present a more costly way for the

Defendants to rent room space due to the addition of paid commissions.

40. OTA's present a dilemma to the Defendants because they offer options that

ordinarily would be difficult to find. Many of the boutique hotels who advertise on

OTA's offer more competitive pricing which further put downward pressure on the

Defendants profitability. They also offer detailed information about the Defendants

competition such as pricing, special offers, ratings by other consumers and other

information that potentially may lead consumers away from renting room space

from the Defendants? OTA's offer consumers thousands of room options that prior

to their existence would have remained anonymous to consumers therefore

allowing the Defendants free to charge whatever they like instead of needing to be

competitive.

41. OTA's depend on the Defendants to provide a current inventory of available

rooms to market that are contingent on them executing lodging agreements to

disclose that information.

42. Although the Defendants regularly enter into lodging agreements with various

OTA's they are reluctant to pursue that marketing avenue. Despite the vigorous

sales provided by the OTA's the Defendants find those relationships

counterproductive as they impart various negative connotations on their bottom

line. Having OTA's act as agents to sell room space has/had an impact on

profitability due to commissions accrued for their services. Additionally once a

consumer visits an OTA he/she soon discovers there are many other options that

might be more cost effective, have a better location or offer more enticing ancillary

services to consumers who without obtaining that knowledge would be eager to

lodge at one of the Defendants properties while being charged a [1]rack rate. Now

in order to stay competitive the defendants must provide more services and offer

pricing well below what they originally intended.

43. Commissions tendered to OTA's, are typically 12-20% depending on several

mitigating circumstances such as availability, time of year, location or prominence.

Selling room space directly provides the Defendants better profitability which

benefits them greatly.

44. Additional impact on the Defendants revolves around customer loyalty, having

consumers search for Hotel rooms through OTA's, is counterproductive in respect

to future booking possibilities.

45. The Defendants have indicated that withholding room inventories from OTA's,

puts those third party marketers at a severe disadvantage therefore achieving better

customer loyalty for themselves. The Defendants would prefer to have consumers

visit their direct marketing websites rather than shop for vacant Hotel space within

the purview of OTA's. However consumers have grown accustom to the wider

variety of properties offered by OTA's as well as having a wider variety providers

vying for their dollars therefore giving consumers an advantage to find more

competitive pricing.

[1]A **hotel rack rate** is the "published **rate**," or "the maximum a property charges for a room," according

to Frommer's Travel Guides. It is sometimes quoted to potential customers over the phone, and it may be

displayed on the room door.


## SECOND ALLEGATION OF SUBSTANCE
*Conspiracy to Suppress Keyword Searches Affirmed*


46. It is well known that on frequent occasions Hotels have denounced the invasive

practices of OTA's. On numerous occasions the portrayal of how downward

pressure is plaguing their bottom line profits was discussed. The topic has been

addressed during the annual Hotel conference in Dallas, Texas as well as meetings

of the American Hotel and Lodging Association.

47. Corporations generally make a concerted effort to suppress discussions

pertaining to pricing with competitors to eliminate the implication of antitrust price

fixing. Many large corporations publish advisories that their employee's must

adhere to forbidding them from publicly or privately having conversations that

might be misconstrued as violations. They are also instructed to thwart the efforts

of others who attempt to engage them in that same subject matter.

48. The Federal Trade Commission publishes a guidebook addressing the topic of

Antitrust. It states, "illegal to use a trade association to control or suggest prices of

members, It is illegal to use information sharing programs, or standardized

contracts, operating hours, accounting, safety codes or transportation methods, as

disguised means of fixing prices."

49. Although great efforts have been effectuated to dissuade employee's of large

corporations from engaging in discussions that may implicate them in a conspiracy

to price fix, it still happens. On the 19th day of November, 2014 at the Omni Dallas

Hotel in which representatives of the Defendants were in attendance and

participated in such discussions. Dan Lesser, President and CEO of LW Hospitality

Advisors LLC, exemplified for private consumption what has/is well know

throughout the industry that, "Technology advances with OTA's continue negative

pressure on room pricing." As a regular lecturer Mr. Lesser advocated during that

meeting to "Raise Room Rates Now Aggressively Now."

50. Following Mr. Lesser's advocation another member who was in attendance,

Katherine Lugar, a CEO of the American Hotel and Lodging Association

championed her own contentions when she stated, "Unity" as well as "Stronger

and Better Alignment," as well as, "deceptive ad buys" and "unauthorized purchase

of words," by OTA's must be addressed.

51. Katherine Lugar, CEO of the American Hotel and Lodging Association

(AHLA) advocated her position to, "stop the use of unauthorized purchase of

words." Onboard and in attendance at this meeting and others were board members

of AHLA, Rena Hozore Reiss, Executive Vice President, General Counsel and

Secretary of Defendant Hyatt Hotels; Jim Holthouser, Executive Vice President,

Global Brands of Defendant Hilton Hotels; David Grisson, Group President of

Defendant Marriott Hotels; Kieth Pierce, Executive Vice President, Brand

Operations of Defendant Wyndham Hotels; and Joel Eisemann, Chief

Development Officer, The Americas, Intercontinental Hotel Group; all of those

aforementioned board members attended AHLA meetings to collaborate,

coordinate and affirm their commitments to participate and abet facilitating a

massive conspiracy to thwart any further implementation of keyword bidding by

OTA's.

52. Over the course of many years various industry leaders have attempted to propagate a concept that acts such as bidding for keywords contravenes trademark laws. Though many attempts have been made, there has been no court willing to uphold that allegation as true. Fully clarified in 2014 was the practice of keyword bidding is not only legal, it is also pro-consumer and pro-competitive. One such case was adjudicated by the Federal Trade Commission in 2016 when a complaint was filed against 1-800-contacts addressing settlement agreements entered into from 2007-2013 in concordance with their competitors prohibiting bidding on branded keyword searches. The Federal Trade Commission adjured those restrictions advocated were at the expense of consumers who would be harmed by such actions by reducing the amount of information available to abet consumers to save money or cause consumers harm by artificially inflating prices unnecessarily at their expense. Furthermore the court affirmed the practice of restricting branded keyword searches would disrupt consumers from receiving pertinent information pertaining to pricing thereby disrupting a functioning price setting mechanism.

53. After engaging in unchartered discussions during the aforementioned meeting held in Dallas on or about 2015, the Defendants concordantly reconciled to stop bidding against each other for branded keyword searches. They also embarked on a

mutually beneficial commitment which included written proviso's prohibiting

OTA's from bidding on keyword searches.

54. In 2015 the Defendants entered those unlawful provisions into contracts

executed with Expedia and Priceline prohibiting them from any further bidding on

Hotel branded keyword searches.

55. One example of a restrictive covenant entered into during November, 2015 was

between Defendant Marriott and Expedia in Paragraph 6.1(c) where it states:

> "No party will knowingly use in any way, including a bid in
>
> paid search engine advertising, any other parties [sic]
>
> intellectual property, including the trademarks that are listed in
>
> Exhibit G and are owned by or licensed to Expedia or Marriott,
>
> as applicable (whether registered or not registered) for use in
>
> connection with hotel services. Expedia will list Marriott Marks
>
> listed in Exhibit G as well as its common misspelling as
>
> negative keywords as indicated in order to prevent its ads from
>
> appearing as a result of a search for those terms."

56. Another example is notated in Paragraph 12 of the August 2015 agreement

between Defendant Hilton and Expedia which states:

> "Neither party shall knowingly bid on or otherwise use any of
>
> the other parties trademarks…or common misspellings for use
>
> in connection with hotel services with the intent of targeting
>
> specifically the other parties properties or services. Each party
>
> shall actively apply negative keywords for the Marks and
>
> common misspellings of the other party."

57. In furtherance of the new policy, the Defendants began proffering "cease and
desist," memorandums to OTA's who offered hotel rooms in consonance with the
Defendants new mandates, particularly to Expedia and Priceline which prohibits
OTA's from engaging in any further branded keyword search advertising.

58. Exemplifying the end result of the Defendants unlawful efforts was when a
consumer searched for "The New York Hilton," the only advertisements available
to them were those explicating, "Hilton." All past advertisements from Priceline
and Expedia were summarily expunged. All that appeared once a branded keyword
search was initiated by a consumer was for "Hilton." Occasionally a branded
keyword advertisement would materialize from an obscure OTA that yet received
a, "cease and desist," memorandum from the Defendants. A search by a consumer
on Yahoo for "The New York Hilton," would restrictively only yield information

pertaining to that or other Hilton Hotels nearby. Priceline and Expedia were all but

eliminated from providing consumers a cost effective avenue to lower the cost of

lodging. Being that Priceline and Expedia controlled 90% of marketshare for all

OTA branded keyword searches, the result caused consumers such as the Plaintiff

to suffer monetary harm.

59. The execution of those restrictive covenants when imposed on OTA's by the

Defendants resulted in stifling competition which impugned consumers with

artificially inflated prices for the same lodging accommodations found prior to its

execution. Other negative effects to consumers were/are higher transaction fee's

and raising room rates contravening consumers best interests who now have/had to

pay higher prices for the same accommodations that were available prior to the

execution of those illegal restrictive covenants.

## MARKET RELEVANCE AND DEFENDANTS MARKETING POWER
### *Violation of Antitrust laws*

60. The plaintiff alleges being impugned by the Defendants willful violation of

Antitrust laws which includes all products and geographic locations.

61. The Plaintiff alleges that the markets effected are, direct marketing, booking

through websites owned and operated by the Defendants and through OTA's. The

Defendants hold dominion over 60% of all Hotel rooms available for lodging in the

United States exclusively. OTA's known as Expedia and Priceline command 90%

of all OTA reservations proffered in the United States. Combined, the Defendants

and OTA's, are responsible for 75% of all lodging reservations procured online.

62. For the most part potential lodgers prefer reserving Hotel rooms online in lieu

of in person or by telephone. OTA'a are uniquely situated in the marketplace as a

preferred means of researching potential Hotel lodging. Offering a wide variety of

Hotel types, reviews from lodgers who already visited those various Hotels and

disclosing pertinent facts such as attractions, restaurants and transportation

available close to the desired Hotels they consider makes OTA's quite attractive.

63. The ease of employing internet Hotel bookings has been responsible for an

explosive increase in online reservations.

64. Online bookings in the United States are the focal point of this complaint.

65. The Defendants invoking horizontal agreements amongst themselves is not

only illegal but also morally reprehensible. Conspiring to stymie outside agents

from gaining relevant information to propagate competition is the very definition

of antitrust. The Defendants who control 60% of all Hotel rooms available in the

United States have illegally foreclosed on OTA's, who book 90% of online

reservations.

## ANTITRUST DAMAGES TO THE PLAINTIFF
*The Defendants Conduct Caused the Plaintiff to Overpay*

66. During the time period when a written agreement was ratified by the

Defendants who attended a number of meetings sponsored by the American Hotel

Lodging Association in or around 2014, the Plaintiff was a hotel guest of various

Hiltons Homewood Suites Hotels for approximately 800 days.

67. Geographically the Plaintiff sought accommodations within the TriState Area

of the United States (New York, New Jersey and Connecticut).

68. Given the Plaintiffs unexpected mitigating circumstances that led him to

require such a long period of Hotel lodging, price was most important.

69. The Plaintiff relied solely on the internet (online booking) to disclose what

Hotel properties were available. Also important was the best price possible,

handicap accessibility and other important ancillary services necessary to

accommodate his needs.

70. During his quest to locate affordable accommodations the Plaintiff employed

the services of numerous OTA's including Expedia and Priceline. Due to the

anticompetitive nature of the Defendants written illegal agreements, it was nearly

impossible to uncover enough information to afford him an educated conclusion.

71. When the Plaintiff searched the internet by employing the services of OTA's, he

discovered there was no difference in price between the OTA's listings for

accommodations and those of direct marketing websites sponsored by the

Defendants.

72. The illegal scheme promulgated by the Defendants harmed the Plaintiff

because the OTA's, were forced to raise prices in accordance with the new

contractual provisions that were forced upon them to quash competition. Those

new provisions cost the Plaintiff to pay more than he would have before the illegal

scheme by the Defendants was effectuated.

73. The Plaintiff is a disabled American citizen.

74. The Social Security Administration deemed the Plaintiff as "fully disabled"

after the adjudication of to separate hearings that included the testimony of six

board certified physicians.

75. Due to the tenuous nature of the Plaintiffs Rheumatoid Arthritis, Psoriatic

Arthritis, Hypertension and chronic pain suffered as a result of his asperities, any

additional stress only exacerbates what is already prevalent.

76. Being forced to endure the additional financial burden forced upon him by the Defendants anticompetitive scheme caused him great pain and suffering.

77. Stifling information resulting from agreements between the Defendants forced the competition (OTA's) to withdraw from offering lower priced and higher quality accommodations to the public.

78. Not only did the Defendants foreclose opportunities for OTA's to offer better pricing and higher quality accommodations to the public, they also foreclosed all opportunities to the Plaintiff to receive those lower prices that had been available prior to the Defendants executing the restrictive illegal provisions that are at the heart of this complaint.

## ALLEGATIONS OF WRONGDOING BY THE DEFENDANTS

79. Many questions exist for the esteemed Court to decide that negatively effected and caused great harm to the Plaintiff. Amongst those questions are the following:

a.  Establishing whether or not the Defendants knowingly and willingly engaged in conspiratorial behavior that illegally restrained those competitors of the Defendants (each other and OTA's) from offering lower priced Hotel rooms to the public;

b.  Were the Defendants involved in a scheme to restrain trade;

c.  Did the anticompetitive written agreements to restrict information to

     competitors cause the Plaintiff to suffer harm by being charged inflated prices

     for his lodging accommodations;

d.  Did those anticompetitive written agreements restrict information to

     competitors causing the Plaintiff to pay inflated transaction fee's;

e.  Is the Plaintiff entitled to recover treble damages and compensation for time

     spent adjudicating this complaint;

f.  To disclose whether or not those same restrictive practices by the Defendants

     continue to this day therefore requiring injunctive relief to stop the current

     practice of restricting the free flow of information available to promote better

     prices for consumers;

g.  The court must determine whether the Defendants were entitled to receive their

     ill gotten gains by invoking illegal restrictive covenants on the competition at

     the expense of the Plaintiff;

## COUNT ONE (1)
### *VIOLATION OF 15 U.S.C. § 1 (Bid Rigging)*

80. Included in Count One (1) are all prior paragraphs explicating relevant

allegations which afford the Court an opportunity to appropriate sufficient evidence

to properly adjudicate the issues before it.

81. The Defendants held, "*In Person*," meetings for the purpose of consummating written agreements that have no other purpose than to restrain trade, stifle competition and ingratiate themselves as beneficiaries to receive undue monetary rewards arising from illegal horizontal agreements at the Plaintiffs expense.

82. At the heart of this complaint are allegations of bid rigging to prevent OTA's from offering lower price hotel accommodations to the public that if not agreed to by the intended targets result in an intentional illegal group boycott at great cost to the Plaintiff.

83. The Defendants executed horizontal agreements for the sole purpose of preventing competitive advertising, to protect themselves from having potential consumers compare prices and to reduce downward pressure on hotel room pricing. By conspiring to enact restrictions of relevant information to OTA's, it restrained trade, stifled the free flow of information to potential consumers, prohibited free market price setting, reduced downward price pressure thereby self ingratiating themselves at consumers and the Plaintiffs expense and most importantly artificially inflate prices thereby causing harm to the Plaintiff.

84. The Defendants acted concordantly as a group when they conspired to:

   a.   Enter into agreements at cost to consumers;

b.  Conspiring to stop competing with each other for branded keyword
    searches;

c.  Preventing OTA's, from accessing branded keyword searches.

85. The Defendants knowingly and willingly employed bid rigging and group

boycott as a tactic to artificially inflate prices at great cost to the public and

plaintiff by threatening to withhold vital information from OTA's thereby illegally

restricting trade from the marketplace, thereby harming the plaintiff.

86. The Defendants enacted their scheme knowing they possessed valuable market

power.

87. The Defendants knowingly and willingly foreclosed on vital information to

illegally exclude competition from the marketplace at cost to the public and

Plaintiff.

88. As a result of the Defendants colluding with each other, the Plaintiff and public

were subjugated to paying higher prices for lodging then prior to executing the

aforementioned illegal agreements.

### COUNT TWO (2)
### VIOLATION OF 15 U.S.C. § 1
*The Willful Execution of Agreements to Restrain Free Trade*

89.  Included in Count Two (2) are all prior paragraphs explicating relevant allegations which afford the Court an opportunity to appropriate sufficient evidence to properly adjudicate the issues before it.

90. The Defendants knowingly, intentionally and willingly engaged in formulating and then executing horizontal agreements for the sole purpose of restraining trade, stifling competition and artificially inflating prices of room rates at great expense to the public and the Plaintiff in particular. These antithetical horizontal agreements were imposed on OTA's to prevent downward pressure on the hotel room marketplace.

91. The Defendants knowingly, intentionally and willingly engaged by collusion to suppress branded keyword search advertising from both OTA's and each other's direct marketing websites to illegally abate downward pricing pressure. Furthermore, the Defendants succeeded in stifling information that they consider to be antithetical to their bottom line profits. The elaborate scheme was embarked upon knowing the result would bring undue profits causing harm to the public and Plaintiff.

92. The Defendants acted concordantly as a group when they conspired to:

   a.   Enter into agreements at cost to consumers;

   b.   Conspiring to stop competing with each other for branded keyword
        searches;

   c.   Preventing OTA's, from accessing branded keyword searches.

93. The Defendants executed agreements which are synonymous with contracts
that when obtained constitute a conspiracy to illegally restrain trade at great cost to
the Plaintiff.

94. The illegally executed agreements encompass more than 60% of all hotel room
marketshare in the United States sufficiently stifling competition.

95. Under the "*quick look*" and/or *rule of reason standard*, the Defendants are
liable as creators, maintainers and enforcers.

96. The Defendants enacted their scheme knowing they possess valuable market
power.

97. The Defendants knowingly and willingly extorted bid rigging and group
boycott in order to artificially inflate prices at great cost to the public and plaintiff
by threatening to withhold vital information from OTA's thereby illegally
restricting trade from the marketplace, thereby harming the plaintiff.

98. The Defendants knowingly and willingly foreclosed on vital information to illegally exclude competition from the marketplace at cost to the public and Plaintiff.

99. As a result of the Defendants collusion, the Plaintiff and public were subjugated to pay higher prices for lodging then prior to executing the aforementioned illegal agreements.

## PRAYER FOR RELIEF

100. THE PLAINTIFF BEGS THE COURT, to impose the following relief by issuing a judgement for:

a.  Statutory money damages in favor of the Plaintiff for all claims asserted;

b.  Costs incurred by the Plaintiff to adjudicate the issues;

c.  Penalties against the Defendants for violating the law;

d.  An injunction to stop the Defendants from further pursuing their asserted behavior;

e.  Punitive damages as the Court see's fit;

f.  Damages for intentional infliction of emotional and physical distress on a disabled person namely the Plaintiff;

g.  Penalties for conversion;

h.  and such other relief deemed appropriate by the esteemed Court.


## DEMAND FOR A JURY TRIAL

101. PLAINTIFF DEMANDS A TRIAL BY JURY OF HIS PEERS

Signed this 21st day of August, 2018 at Great Neck, New York

_____x

Jay Brodsky, Plaintiff, ProSe

*Previously filed*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | |
|---|---|
| Jay Brodsky | ) |
| *Plaintiff/Petitioner* | ) |
| v. | ) Civil Action No. |
| Hilton Worldwide Inc. | ) |
| *Defendant/Respondent* | ) |

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
## (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at:                                                                                                      .
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name. I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.* If I am employed, my employer's name and address are:
Disabled Unemployed


My gross pay or wages are:  $          0.00    , and my take-home pay or wages are:  $             0.00  per

*(specify pay period)*                                              .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

| | | |
|---|---|---|
| (a) Business, profession, or other self-employment | ☐ Yes | ☐ No |
| (b) Rent payments, interest, or dividends | ☐ Yes | ☐ No |
| (c) Pension, annuity, or life insurance payments | ☐ Yes | ☐ No |
| (d) Disability, or worker's compensation payments | ☑ Yes | ☐ No |
| (e) Gifts, or inheritances | ☐ Yes | ☐ No |
| (f) Any other sources | ☐ Yes | ☐ No |

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

SSDI - $1,298.00 Monthly
SNAP - $356.00 Monthly





2018 AUG 24  P 3: 10





| 1 | US POSTAGE & FEES PAID<br>4 OZ FIRST-CLASS MAIL FLATS RATE<br>RETAIL | 062S0010207814<br>FROM 11023 |
|---|---|---|
| | | stamps<br>endicia<br>08/22/2018 |

## USPS FIRST CLASS MAIL®

Jay Brodsky
240 East Shore Road
Apt. 444
Great Neck NY 11023          C014

**SHIP**
**TO:**    ProSe Clerks Office
          U.S. Courthouse
          50 Walnut Street Room 4015
          Newark NJ 07102-3570